The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention for the Court is now sitting. I say to the United States and this Honorable Court. Morning, everybody. Please be seated. Welcome to this special sitting of the United States Court of Appeals for the Fourth Circuit. My colleagues, Judge Niemeyer and Judge Berner are very pleased to be with you this morning and very much appreciate the kind hospitality of the Elon University School of Law and Dean Kramer and the entire staff who have been so gracious and accommodating both last night at the dinner and this morning. We have three cases on for argument this morning and we'll begin with 24-1828 Needham v. Merck. Mr. or Ms. Bronstein. Thank you. May it please the Court. My name is Marjorie Bronster and I'm representing the appellants in this matter. The Vaccine Act is central to this appeal and while I intend to point out some of the grave errors committed by the District Court on the timing, on the statute of limitations, on treating the time restraints as jurisdictional, and on equitable tolling and other procedural and legal issues, what I'd like to start with is the constitutional question. It is the fundamental issue that needs to be addressed. We contend that the Vaccine Act is unconstitutional. The Act on its face and as applied violates the presentment clause of the Constitution, Article 1, Section 7, and given the non-severability provision in the Act, the whole Act fails. Ms. Bronster, can I ask you about that? So, if we disagree with you on the first issue relating the requirement to complete the process that the Vaccine Act provides for litigating these kinds of cases up through the Vaccine Court, then the Court of Federal Claims, and the Federal Circuit, and we, and I'm not suggesting that this is what we're going to do, but if we were to affirm the Court on that issue, would we reach the presentment clause issue? Yes, I believe you must, and the reason for that is that to make that determination, you have to decide whether or not the Vaccine Act is constitutional, because by applying the Act, you're impliedly deciding that it is constitutional, but if, as we submit the avoidance doctrine, we usually don't start with the constitutional claim against the statute and find it unconstitutional if there are other grounds by which to decide the case, and I must say, when was this Act passed? What, 1986 or something? Yes. So, here we are 40 years later. Nobody's raised this. You have a process that's not unlike the Controlled Substances Act in listing components on the list. I must say, I, you can present it and you can argue it, but you might have a more fruitful time on some other issues, but you, that's just my observation. I understand, Your Honor. However, I believe that because of the fact that deciding this case on the timing issue alone presupposes that that timing issue set forth in the Vaccine Act is constitutional, and when you look at this Act and you see the wording of the statute that says... Constitutionality is not jurisdictional. It's, sure, it's important, but if you ordered to bring a claim under a particular cause of action and there's a statute of the constitutionality, a statute under which it's brought, but you can make your constitutional argument. I didn't want to preempt that at all. I just wanted to give you something to think about. Thank you. I will certainly try to keep some time to address the other issues. In 1986, the Vaccine Act was passed by Congress and approved by the President, and its aim was to address a crisis involving the DTP vaccine. Because it was not cost effective to make, it was causing a small but significant number of kids to be severely injured, and Congress at that time negotiated a balance that would grant certain immunity to manufacturers, but on the other hand, it would grant a quick and fair and easy way for injured children to get compensation without having to prove causation. Council, why isn't the Vaccine Act like the Tariff Act in Field and Clark? It seems to me that it's pretty close to being on all fours. Actually, we believe that the Tariff, that the Vaccine Act is on all fours with the Line Item Veto Act. Except that the Line Item Veto Act gave the President complete discretion, what aspects of a bill to strike, what to leave, so it really was, in essence, a rewrite of what Congress passed. But here, there are certain conditions that have to precede the addition of a vaccine, including the addition right to the tax and also the CDC recommendation that they be added. So the Secretary can't simply add a vaccine. There needs to be certain things that take place, and in fact, after those things take place, it's my understanding the Secretary has to then add the vaccine to the chart. Isn't that right? Yes. However, the issue in Field was that there was a completely external actor, the foreign countries who were taking actions. In this case, it is part of the Department of Health and Human Services. Well, but Congress adds the tax, right? So in fact, in essence, it's exactly the actor that needs to present under the Presentment Clause. Well, the tax actually does not change the vaccine table. What it does is it sets the time at which the, um, it's a timing issue, not a change issue. And I think the most important reason- It's a regulatory issue. Congress is now bringing within the umbrella of the funding for this Vaccine Act, the vaccine. And you would just separate the two entirely, I gather. No, because I believe that the Act itself, if you look at Section 14, the one that gives not only the authority to the Secretary, but also the mandate to the Secretary, there is a tremendous amount of discretion. First, the Secretary could order the CDC to do things. The CDC is within the Department and under the Secretary's control. But more importantly, once that vaccine is added, and, you know, we can agree to disagree on whether or not it's an external factor or an internal factor, the Secretary is given complete discretion under 14E, complete discretion to set the injuries, disabilities, illnesses, conditions, and deaths associated with the vaccines and the timeframe for those things. So under 14E, it is not just a solitary question. And even if she does not or he does not have discretion with respect to the addition, if this condition is met, there's absolute discretion with respect to the changes and the injuries. Can I ask you to tell me or tell us why the Federal Circuit in the Tehran case got this issue wrong? I mean, you rely very heavily on the dissenting judge's opinion in that case, but I want you to talk specifically about why that analysis was incorrect. The Tehran decision was incorrect for two reasons. Number one, well, a number of reasons, but the primary one is that if you read the Tehran decision, it says that amend does not mean amend. And that just simply is sophistry. Amend as stated in the act, it says specifically that the Secretary may amend, modify the table, the table itself. Now- Well, let me ask you this, I guess a practical question. What do you think, under your analysis, it seems to me that every time a new vaccine was developed, that Congress would have to act to modify the statute to include it in the table, right? Or what do you mean? What's the alternative? This isn't the logical way to add vaccines or modify the act. Because Congress in the first instance put the vaccine table in the law, when they gave the Secretary the authority, it was to change the law, to amend the law. And that violates the presentment clause. So under your view of things, any amendment, any vaccine addition has to be done pursuant to a congressional amendment or- Yes, but Congress could have fixed it. They were in- So why isn't the Controlled Substances Act unconstitutional? That's been applied for years and the DOJ adds adds substances to that with the authority of Congress. And I believe that that too is unconstitutional, but frankly, I have not looked at- You've got a pretty big reach, I mean- Well, I mean, and it may well be that that has no non-severability clause. I think the fact that there's a non-severability clause here- Well, that just gives you a leverage on the whole statute, but you still have to find something unconstitutional. And- Correct. And it really, the idea is that we constitution confers the legislative power to Congress, but it clearly has a power to delegate some discretion in the administration of its acts. And that has been going on for a long time. And the question is whether a list that is subject to the congressional enactment can be adjusted through regulation. And basically, your proposition would say that just cannot be done. Correct. If the act says, gives an executive branch actor, in Clinton, it was the president, here, it's the secretary, the right to change a statute, which is what this does. Well, that's the conclusion. The question is the statute's really not changed. What's changed is, are they subject matter of the vaccines and medicines that are covered by the act? And that's a long list and- Well, it wasn't a long list to begin with. It was for specific vaccines. And had the original act said, we're giving this to the secretary to do by rulemaking, it wouldn't have been a problem. Well, it does say that it's an initial table. So that suggests that it will be changed in the future. It's not set in stone. It actually provides procedures for adding. And you said earlier that it was completely discretionary, but as I see it, the secretary is actually required to add vaccines that are recommended by the CDC for routine administration. And so that doesn't leave much discretion. In the adding, in that word, the adding is not discretionary. Well, that's what happened here, was adding. Okay, but- We're not in a situation where it's deleting, which I think could be a different question, but here it's adding. And you have to look at B and C of section 14E, because B says the secretary also has to add and delineate the injuries, disabilities, illnesses, and the timeframes. And in fact, the secretary never did that. The secretary never did rulemaking initially to add the HPV vaccine and didn't even follow this, but had discretion as to what injuries to add. If you were complaining about that, then you would be attacking the regulation, the executive action, but you wouldn't be attacking the constitutionality. The constitutionality of it is framed by the statute and the delegation, the lawful delegation or not, of executive power. And when it says that the secretary shall amend, that puts the legislative responsibility into the executive branch. And that's what Clinton doesn't allow. All right. Thank you, Ms. Bronson. You have some time left for rebuttal. Counselor, at the risk of butchering your name, I'm going to let you introduce yourself. I don't want to get it wrong. Good morning, Your Honors. Edward DeMolin for Merck. May it please the court. When Congress passed the Vaccine Act in 1986, it confronted a crisis in public health. Vaccines prevented thousands of deaths every year, but rising lawsuits had driven manufacturers out the market until only one maker of a key vaccine was left in the U.S. The Vaccine Act made two major changes. First, it created what's commonly called Vaccine Court, a mandatory compensation program that's funded by manufacturers through taxes on their vaccines. The act also imposed significant tort liability protections for manufacturers. For nearly 40 years, as Judge Niemeyer noted, Congress's system has worked. But plaintiff's arguments would undermine it, either indirectly or directly. First, plaintiffs argue they can file civil suits even though they did not file timely Vaccine Court petitions. But every court that's considered this question applied Section 11 of the Vaccine Act and barred suits like plaintiff's. A contrary ruling that either Vaccine Court or its deadlines are optional would frustrate Congress's goals. If we were to agree with you on that issue, do we need to go any further? Your Honor, I would defer to the court on that. That's great. We'd like your help. What I would say, Your Honor, is that at very most, the court would address whether adding Gardasil to the program was constitutional. As I read your brief, there didn't seem to be any argument that we needed to reach this issue, even if we agreed with you on the statute of limitations question. Is that your point? Is that your position? Your Honor, I don't see why the court would need to reach that issue. Supreme Court has said so, that we don't need to reach that. As a matter of fact, the preference is not to reach the constitutional issue. Well, that's a good reason not to do it then. I'm just wondering if that's your position. Yes, it's sort of strange that somebody is barred from bringing an action under a statute and then would demand that we decide the constitutionality of the statute rather than their qualification for bringing it. This is not a jurisdictional issue on either case. Limitations is not a jurisdictional issue and neither is a constitutionality. And so the question is, what is the preferred order of decision making? And the constitutionality of the statute is a major decision. It's something patrolling the, in this case, the jurisdiction of two branches of government in a major statute that applies, had been applied broadly for almost 40 years. And it seems to me, unless we were anxious to do it or unless it was pretty clear, but it's a little murky, isn't it? Well, Your Honor, I agree with Your Honor that if you resolve this issue on the language of Section 11 and that plaintiffs are barred from bringing their suits, I don't see why there would be a need to go on to constitutionality. What I would say, again, is that I would have expected you to be much more assertive and say, of course not. Of course not. But what I would say, again, is I think if the court did feel a need to reach that in any way at all, it would just be to say, as to the particular act of adding Gardasil to the program, Congress itself passed a statute that the President signed and there is not any difficulty with that. But I think that you're right. I think that this is a facial challenge to the statute, not an as-applied challenge. So I think we would need, if we were to address the constitutional claim raised, we would need to address the constitutionality of the statute, not the particular act at issue here. So, Your Honor, I think that the way it was framed below was certainly as a challenge just to the addition of Gardasil to the statute. I think that that has expanded in this court to something that's broader. But I'll go back to what Your Honor said earlier, that we don't see a need to address that issue at all. And what about the statute limitations claim? Is this the proper forum to appeal that decision? I would think it would need to be appealed to the Court of Claims. Yes, Your Honor. We completely agree. And that's found in Section 12 of the Vaccine Act. I think Section 12F in particular. The text of that provision says that the decision of the Court of Federal Claims, which certifies the vaccine court rulings, shall be final as to the matters involved. Congress then set out a comprehensive appellate process if petitioners want to take an appeal from that decision to the Court of Federal Claims, to the Federal Circuit, ultimately in some of these cases to the United States Supreme Court. Well, I think it's a little more dicey than that. It seems to me if there is a substantive decision made by the vaccine court, that is something that could be raised de novo in a federal court. But to get into a federal court, the statute makes it a condition that you file a timely petition. So it's not the substance of the timely petition, whether it's timely or not, it's the fact of whether you have a qualifying petition at all. And the statute qualifies a has to be filed within X number of days. And the agency found that that was not satisfied. And so the question is now you have a fundamental question of exhaustion as opposed to a sort of a race judicata argument where they decided it and we therefore won't decide it. I mean, if it's de novo, you review that de novo, we would decide it. But the question is, do we get the procedural posture of exhaustion de novo? And I think the issue is couched a little differently in that sense. Well, your honor, let me maybe give how I understand how the scheme works. And I think it's consistent with what your honor just said. Well, I'm posing as a question, you can dispute it if you wish. So when someone goes to vaccine court, the petition is adjudicated. Section 12 says, as I mentioned, that the special master's decision is final. As to those matters decided, there's the appellate process for that. Then under section 11A2, someone is barred and cannot file an action in civil court and the action must be dismissed if they fail to file a petition either at all or fail to file a timely petition. Now, those so the decision of the special master on the timeliness issue, which is, you know, a process issue under the Vaccine Act and that program would be something that can't be revisited under section 12. And again, there's an appellate process for that. I think that's fundamentally different from issues like causation, substantive issues, as your honor described them. And the reason for that, I think is is pretty clear. A tort action applies completely different rules related to substantive issues like causation compared to vaccine, you know. So for the timeliness issue, the plaintiffs are saying, well, when we refile a case in civil court, somebody should reapply section 16 of the Vaccine Act and re-decide this issue under the Vaccine Act of whether we were timely. And that's that is not permissible. On the other hand, if they come in and say, well, under civil law for a civil tort claim, we can have, you know, new discussions about causation and things like that. That's fine. That's a different issue because it's it's not under the Vaccine Act. It's under tort law. Is that I'm not sure if that's what we do with this footnote in the special master's decision suggesting that the plaintiffs can go to civil court or a federal court and reject the judgment. I found that strange. So, your honor, I'd have to look back at that. But what the special master says is that the petitioner can file not later than 90 days after the date of this court's final judgment, essentially appealing the judgment. But what you're saying is that's not the case. So, your honor, I'd have to take a look at that. I could be mistaken, but I think there's boilerplate language that's put into all those decisions that kind of says the same thing. The appeal that's referred to may be the appeal to the Court of Federal Claims, to the Federal Circuit, as I said, I think ultimately the Supreme Court. But I don't think that there's anything the special master said that was at odds with the language of the statute. I think the language of the statute 11-A-2 is what controls. And it controls with respect to every single one of the plaintiff's claims. There's a long list of fraud. Yes. Yes. Every one of them. So, you're saying that every claim that they've brought is barred by the statute of limitations? Every claim. Yes. And that is not disputed. It was not disputed below. It's not disputed here. What I mean to say by that is that the plaintiffs have not argued that there's some distinction as to some claims versus others that they say are not captured by section 11-A-2. And I think that's consistent with the language of that statute and the unanimous decisions interpreting it. You know, we cited several cases that have interpreted it the way that we're arguing for. McDonald and Heber and Goetz and others, and Powers. And they've all done exactly what we're asking for, which is to say when the vaccine court says that somebody filed a petition that's not timely, they say, well, that's a process issue under the Vaccine Act that the special masters are to decide. If they've been rejected from vaccine court on that, we are not going to revisit that issue. We're going to honor the text of section 11-A-2 and say that the case must be dismissed. And that's what we're asking the court to do here. I think it's completely consistent with the statute. And I would mention very briefly that even if there were, it doesn't sound like there, even if there were some question related to that, the district court obviously found for us on an alternative ground, which is to say that even if the plaintiffs were allowed to argue equitable tolling, he still would have dismissed their claims. And they did not raise that point in their opening brief in this court. The only argument that plaintiffs made on reply is that they wanted discovery about equitable tolling. And I think that is not a response to the district court's order. One of the things that the district court held, I think very cleanly, was that the plaintiffs could not show that their own clients had exercised diligence. And that is a requirement to prevail on any theory of equitable tolling. We've actually gone farther. We've had five or six cases starting back with Hutchinson and noted that when Congress sets a statute of limitations, that has cannot be set aside lightly. And equity can do it in very rare circumstances. And we have had over those years, we've said the person's ignorance of something doesn't count. It has to be some intervening third beyond the defendant interfering and preventing the filing of it. It's a very narrow doctrine if you trace it back. I didn't see counsel on either side tracing the doctrine back, but it seemed to me that the arguments they advanced in support of equitable tolling have been explicitly rejected in our cases over the years, since 2000. And so they carry the burden. They a hard barrier to hurdle. I don't want to preclude argument on it, but it seems to me it requires an analysis of all our case law going back and where we said limitations mean what they mean and equity will set it aside and never on the excuses of the plaintiff. The personal excuses, subjective feelings, knowledge of the law, counsel's malpractice, all these things do have not set aside statutes of limitations. And so, yeah, I agree with all of that. One thing your friend on the other side points out is that one of the appellants was actually vaccinated as a child and suggests that we should take into consideration age in our diligence analysis. How should we approach that particular fact pattern? Well, your honor, the plaintiffs have not argued for a minority tolling rule either below or in this court. And that's because it's very clear under the law of the federal circuit that the Vaccine Act did not provide such a rule. I think there's the WJ by RJ decision that was cited, I think, by the district court below. But I think to step back a little bit, Congress passed this act, which is the National Childhood Vaccine Injury Act. I think it was pretty evident that there would be, you know, children who might be using this system. And as the plaintiff's own authorities show, the case in Clure, Congress designed a very particular cutoff for the statute of limitations, which is to say that it starts with the first injury. It does not include a discovery rule. It doesn't, and there's certainly nothing about minor tolling and no court has that I'm aware of and none that plaintiffs have cited has ever said that the Vaccine Act includes a minority tolling rule. So if it did, it would probably abrogate the statute of limitations because it's the whole act is focused on children. And as a matter of fact, we call it the Vaccine Act, but it has children in title. Yes, Your Honor. I don't know what the National Children Vaccine. Well, I guess under your view, even if even if that was an argument that could be made and you say that there are cases that would bar it, that the place to bring it is not in district court after the fact, but in the vaccine court and up through the regular appeals process. Yes, Your Honor. And so just to be clear, our argument is that first, as again, all the courts that have looked at this issue have said Powers, Heber and McDonald, this is not an issue to be revisited in civil court. This is an issue to be decided by the special masters related to whether the timeliness requirement was met. But I'm just saying as an alternative argument, and I think the district court put it that way in the opinion as well, that Judge Bell said, if I were empowered to rule on this, here is how I would rule. And he said he would still find that equitable tolling was not permissible here. I can respond very briefly on some of the constitutional points, unless there are any further questions about the timeliness issue. I would say very briefly that we do think that plaintiff's argument would mean a wide variety of routine legislation would be invalid. The Controlled Substances Act is one. Other examples that we included were statutes related to veterans benefits, things that are part of the Medicaid program. I think it would create an enormous set of changes to the entire legal system to say that this very routine piece of legislation is unconstitutional. And then I think there's just one point that I'll respond to on the substance. I think that the point about Congress amending the table, the majority in Tarrant pointed out that when there are changes made to the table, the old table still applies to people who filed petitions at an earlier time. So it is a new table that's promulgated that is created by the secretary and the old one still exists in the statute. The majority kind of explained further why that's the case and I don't think there's any issue with that. Can I ask you about your colleague's argument that the statute essentially leaves the secretary with unfettered discretion? That obviously was an important fact in the Clinton line-out and veto case where the court said that one of the things we look at are the constraints that are inherent in the statute and deciding whether or not the statute would be constitutional. So what are the constraints in this statute that you say belie the argument that your colleague on the other side has made? Well, I think for Section 14E, which is how Gardasil was added to the program, there are two major constraints, which are that the CDC has to recommend a vaccine and then that Congress has to pass an excise tax that approves adding the vaccine to the program. And I think that the, you know, Congress adding the vaccine to the program through passage of a statute that the president signs, I think is frankly enough to take the presentment clause issue off the table altogether. But in addition, it's obviously a considerable check on the secretary's discretion. A vaccine can't be added to the program unless Congress passes a statute. That's the date that it becomes effective in the program. Then I think as to the other, you know, so I think that's kind of the important point for this case. So when was Gardasil added to the tax? It was, so the tax was passed by Congress at the end of 2006. I think it was signed by the president in December, I think December 20th of 2006. And then that was made effective in early 2007. So it was a long time ago. And then I'll just say a couple of sentences about the 12C order. I would say the court certainly doesn't need to address that. It has nothing to do, this is the motion for judgment on the pleadings, it has nothing to do with why these plaintiffs lost. Further, it has been raised again in bond, which is a pending appeal of the MDL court summary judgment order on the bellwether claims. So it'll be before this court again in a setting where I think it, you know, it can be addressed. But it has nothing at all to do with why the plaintiffs here lost in the district court. And so for all those reasons, as well as the reasons in our briefing, we would ask that this court affirm the decision below. Thank you very much. I'd like to turn now to the issue of the timing. I think, Judge Berner, your question was absolutely on point, which is why did the special master say that you can always start a new action in federal court? And that's because the plaintiff is not required, petitioner is not required to go up through the federal circuit. You're not required to go through the federal circuit, but you're required to file a timely petition. Yes, but when the petition can be rejected, and if the petition isn't decided, you can go to federal court, the default 240 day thing. But the statute is clear, you need to file a petition. And these plaintiffs did file a petition. And when it was when the petition was dismissed, because it was untimely, but it was dismissed, but it was still a petition. And it was dismissed, it was not jurisdictional. And I'm not suggesting jurisdictional, I'm talking about qualifying. In other words, you have to file a timely petition to qualify. And the whole purpose of filing that petition is to invite and encourage claimants to go through the process. And it's being frustrated regularly now these days. I mean, what they're doing is filing the petition, waiting 240 days and opting out. And that isn't really the design. I know it's designed to protect against bureaucracy. But in this case, we're not talking about that. In this case, we're talking about a timely petition. Right. And the question is, who gets to decide the timely petition? When the special master says it's not timely, and the person who's the petition addressed it, and the petition reject, and the plaintiff rejects a special master, as the special master said, if you reject my decision, you may go to circuit court with a de novo case. And that's what the say. It's a de novo case. And so it was up to the court below to look at it anew. And if they had looked at the statute, I guess it's what is 16.1 says that no petition may be filed. It basically is a condition for the petitions filing that it'd be timely. And we are saying that it is the district court in the new case who is required to look at it de novo, not decide the action de novo, but not they don't review the procedural timing of the petition. I don't see. Well, I think that's precisely what the special master said. And that's how the whole system is set up. Well, in fact, I'm sorry to interrupt, but whatever he said, it has to be supported by the law. And that's, that's the argument. And if that was boilerplate, that was intent that was there by mistake, then it doesn't have any legal effect. It has to be supported by the statute and the intent of the statute. So what does your position with respect to my position with that is that section 12 G and section 21, both have the avenues for going to court in a de novo action. We have cited many, many cases that talk about the fact that the entire action is de novo. Is there a case that you've cited that, that in this context where the case is dismissed because it wasn't timely file? No, we, we don't have one, but Florida, I think, why do you think that's the case? Because I don't believe that. I don't know. I don't know. It just hasn't, I don't think it's come up, but what I think is important, which is in the act is in section 23, it says in any stage of a civil action. So they're talking about a civil action, just like the one that was brought in the district court below the vaccine injury table, any finding of fact or conclusion of law of the federal court of claims or a special master in a proceeding on a petition filed under section 11. And the final judgment of federal court claims are not admissible. They're not admissible for any purpose, which shows that the act was intended to be de novo. And we believe that assuming that we agree with you for the sake of the argument, how is your equitable tolling argument, not simply a repackaging of, of the discovery rule, which has been rejected? Well, first of all, we did not get any discovery in, in the vaccine act. You don't get discovery. Well, I think the discovery rule is I just discovered that these two things are connected. So therefore I wasn't bound by this statute of limitations because I didn't know that these symptoms that I'd had all of these years were connected to the vaccine that I received years prior. No, no. My understanding is your argument is, well, they couldn't have filed earlier because although they'd been suffering from all of its various maladies that were before they filed that there was this medical connection between the vaccine and the mountains. Is that not your argument? Uh, no. Um, our argument is that under fourth circuit precedent, we believe that there are two aspects of the equitable tolling. The court below did not consider equitable tolling at all. And in under Cruz and under Lowe's, not only are there extraordinary circumstances that are, that you need to look at, but you also get an opportunity to look at the defendant's conduct to see whether the defendant's conduct affected the ability to go forward with the claim. And under, we've stated in about two or three opinions, I'm just looking at Sosa, looking at Hutchins. I mean, it's Sosa, a petitioner's own ignorance or mistake does not warrant equitable tolling. And, uh, in Harris, we talked about anything that's located with the, even malpractice where the plaintiff is misinformed by the attorney is not equitable tolling. It has to be something external and it has to be a rare circumstance. This is not a subjective excuse thing. Understood. And we believe that we should have gotten discovery of Merck below. We said in Harris to apply equity generously would lose the rule of law to whims about the adequacy of excuses, divergent responses to claims of hardship, and subjective notions of fair accommodation. In other words, the notion is that all of those things do not justify equitable tolling. What we really looked at are things beyond the plaintiff's control, something that prevented the plaintiff from doing it or conduct of the defendant maybe. And there's nothing here to suggest that the claims were concealed. You guys cited literature from 2016, no, it's 2006, starting with 2006 and ending to 2020, a continual stream of literature addressing this and lawsuits were filed beginning in 2016. So this is not something that was district court. You didn't proffer anything. We had tried to proffer and we were not given the opportunity. You didn't even proffer in your brief. We tried below to try to get the court. All it takes is to add a paragraph and this is what we would have shown. If I may answer one question. You can respond to Judge Niemeyer's question. Pardon? You can respond to Judge Niemeyer's question. Um, I thought I had, um, but it's fair enough. I, I was, I was going to ask, uh, respond to something that Judge Niemeyer had asked earlier as to when the tax was passed. Um, for purposes of the, of my, uh, opponent's argument about the constitution and the tax was passed in 2006. At that time, the secretary hadn't done anything. So it wasn't as though the tax could possibly have ratified anything that the secretary had done because the secretary didn't ask until 2007 and at that time didn't pass laws, pass rules, and didn't pass rules till 2011. So the secretary didn't do what even the statute required. So the manufacturer of Gardasil was paying a tax since 2006 to 2011 and did not apparently get protection of the act. No, got protection. What the secretary said was you get complete protection, but since I'm not putting on any injuries fully within the secretary's discretion, it was a completely unbalanced. I'm talking about the protection of the act. In other words, if the, it's not listed on the schedule, it's, if it's listed on the schedule, then you get a protection. The secretary said in 2007, I am going to make it effective as of February, 2007, even though I haven't passed rules. And even though I haven't put it on the schedule and even though I don't put it on the schedule to 2011. So exact challenges of regulation, this doesn't go to the constitutionality. Well, Congress passed a law making it clear that Gardasil is going to be part of the program in 2006 by taxing it. Well, nothing in that taxing law said anything about it being put on the table. Absolutely nothing. And in fact, when, when they put Gardasil on that table in 2011, retroactive and effective in 2007, it gave Merck all of the protections, but gave the plaintiffs none of the benefits of a speedy opportunity to get compensated for a table injury. All right. Thank you, counsel. Thank you. I want to thank both counsel for their arguments this morning. We appreciate the, your being here for your able representation of your clients. We'll come down and greet you and then move on to our second case.
judges: Albert Diaz, Paul V. Niemeyer, Nicole G. Berner